E-FILED
Tuesday, 14 June, 2011 10:03:20 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Oliver E. Sheegog,
              Plaintiff,

vs.                                                 11-cv-1130

Bays, Richard Birkey, Dr. Castrovillo,
Terry Edwards, K. N. Kirkbride,
Dr. O'Basey, Glenn M. Putman,
Martha S. Senkler, Gladyse C. Taylor,
and Two Unknown Correctional Officers.
              Defendants.

MERIT REVIEW ORDER

      The plaintiff is Oliver E. Sheegog. He filed an amended complaint on Thursday, May 26, 2011. Mr. Sheegog is currently incarcerated at Illinois River Correctional Center (hereinafter IRCC) in Canton, Illinois. He has filed an amended complaint against Bays (correctional officer), Richard Birkey (warden at IRCC), Dr Castrovillo (at IRCC), Terry Edwards (nurse at IRCC), K. N. Kirkbride (grievance officer), Dr O'Basey (IRCC), Glenn M Putman (housing unit counselor), Martha S. Senkler (housing unit counselor), two unknown correctional officers (IRCC) and Gladyse C. Tayor (acting Director of Illinois Department of Corrections).

Standard

      The court is required by 28 U.S.C. §1915A to screen the plaintiff's complaint, and through such process to identify and dismiss any legally insufficient claim, or the entire action if warranted. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b).[1]

      Pleading particular legal theories or particular facts is not required to state a claim. Fed. R. Civ. P. 8 (complaint need contain only a short, plain statement of the claim and the relief sought); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000), *citing Nance v. Vieregge*, 147 F.3d

---

[1] Incarcerated plaintiffs are barred from proceeding in forma pauperis if they have "on 3 or more occasions, while incarcerated, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of physical injury." 28 U.S.C. Section 1915(g).

1

589, 590 (7th Cir.). The complaint need only give "a short and plaint statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman v. Tarrant county Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993)(citations and internal quotation marks omitted)(*cited by Dewalt*, 224 F.3d at 612; Fed. R. Civ. P. 8(a)(2).

The merit review standard is the same as a motion to dismiss standard. It is well established that *pro se* complaints are to be liberally construed. *Haines v. Kerner*, 404 U.S. 519 (1972), *reh'g denied*, 405 U.S. 948 (1972). *See also Tarkowski v. Robert Bartlett Realty Company*, 644 F.2d 1204 (7th Cir. 1980). They can be dismissed for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines*, 404 U.S. at 521; *Gregory v. Nunn*, 895 F.2d 413, 414 (7th Cir. 1990).

When considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, the court takes the allegations in the complaint as true, viewing all facts--as well as any inferences reasonably drawn therefrom--in the light most favorable to the plaintiff. *Bethlehem Steel Corp. v. Bush*, 918 F.2d 1323, 1326 (7th Cir. 1990). Dismissal should be denied whenever it appears that a basis for federal jurisdiction in fact exists or may exist and can be stated by the plaintiff. *Tarkowski*, 644 F.2d at 1207, *quoting Littleton v. Berbling*, 468 F.2d 389 (7th Cir. 1972).

Allegations, Discussion and Conclusion

On December 18, 2009, while the plaintiff, Oliver Sheegog was playing basketball at the IRCC gym, he sustained an injury to the fifth finger of his right hand. He immediately felt a sharp pain in his right fifth finger. He reported the injury to two correctional officers assigned to the gym that same day. The correctional officers instructed the plaintiff to inform his housing unit officer of the injury. As the plaintiff has raised no constitutional claim against the two unknown correctional officers, pursuant to Fed. R. Civ. Pro. Rule 12(b)(6), they are dismissed as defendants.

**Officer Bays.** Approximately fifteen minutes later, the same day, the plaintiff Sheegog reported the injury to the housing unit officer, defendant, Officer Bays who immediately wrote an injury report and sent the plaintiff to the Health Care Unit. The plaintiff arrived in the Health Care Unit two to three minutes later. As the plaintiff has raised no constitutional claim against Officer Bays, pursuant to Fed. R. Civ. Pro. Rule 12(b)(6), Bays is dismissed as a defendant.

**Terry Edwards.** When the plaintiff arrived at the Health Care Unit, he was examined and treated by a registered nurse, Terry Edwards. During her evaluation of the plaintiff's injured finger, the plaintiff informed Edwards of the pain he felt when he injured his finger and the pain he was experiencing during the evaluation. Edwards determined that Sheegog had sustained a muscle/joint injury to his right fifth finger; she noted that he had limited mobility; he was unable to bend the finger; he had a slight edema around the knuckle; the finger was tender on

examination; and he was unable to use the affected body part. Edwards provided the plaintiff with 18 - 200 mg Ibuprofen tablets for pain, one plastic bag for ice and two weeks gym and yard restriction. The medical records also indicate that Terry also advised the plaintiff to followup with a doctor if symptoms failed to resolve within five days or if symptoms worsen. The medical records show that Nurse Terry issued a pass for the plaintiff for Monday, December 21, 2009 and the records indicate that the plaintiff was seen on an 8:00 a.m. call pass on December 21 2009. Again Nurse Terry provided 18 more Ibuprofen 200 mg for pain, an ice pack and plastic bag, as well as gym and yard restriction for two weeks. Plaintiff alleges that during the four days he waited, the pain medication did not relieve the pain, but statements he made in his complaint belies this fact. In his complaint he admits that he told Dr. Castrovillo that the pain medication provided by Nurse Terry gave him relief for three to four hours for four tablets. Plaintiff claims Edwards knew plaintiff's finger needed to be splinted and that she also knew failing to splint his injury would result in an inappropriate response in relation to her own examination. When asked during the merit review conference, what basis does he have for saying Edwards knew his finger needed to be splinted. Plaintiff says that Dr. Castrovillo said the finger needed to be splinted and he ordered that it be splinted. However, the court notes that Castrovillo was not present for the December 18, 2009 examination and he did not order a splint until December 22, 2009 when he examined the plaintiff and determined that a splint was necessary. No trier of facts could find that Nurse Terry Edwards was deliberately indifferent to the plaintiff's serious medical needs. Therefore, pursuant to Fed. R. Civ. Pro. Rule 12(b)(6), she is dismissed as a defendant.

**Dr. Castrovillo.** First, as already stated the medical records show and the plaintiff admitted during the merit review conference of his complaint that Edwards provided medical care for the plaintiff the day of his injury, December 18, 2009 at 7:00 p.m., and again on December 21, 2009, 8:00 a.m. Dr. Castrovillo first examined the plaintiff on December 22, 2009. Plaintiff told him that he was experiencing sharp splitting pain and wanted a stronger medication. Dr. Castrovillo did not provide a stronger pain medication. Perhaps, Dr. Castrovillo decided the plaintiff did not need a stronger medication because plaintiff told him that the 200 mg. Ibuprofen provided by Nurse Edwards gave him relief for three to four hours at a time. Disagreement with a doctor's treatment decisions cannot be the basis for an Eighth Amendment challenge. *Steele v. Choi*, 82 F.3d 175, 178-79 (7th Cir. 1996); *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). In his complaint, the plaintiff only claimed that Dr. Castrovillo denied his request for a stronger pain medication, but during the conference, the plaintiff claims Dr. Castrovillo did not prescribe any pain medication. The court notes that the medication provided to the plaintiff by the nurse did not require a prescription. Plaintiff never states that he asked Dr. Castrovillo for additional Ibuprofen 200 mg and his request was denied. Further, the plaintiff had two options to obtain additional pain medication. He could have signed up for nurse sick call and request additional pain medication. Second, based on the court's experience of presiding over prisoner cases, it takes judicial notice that Tylenol 500 mg and a generic pain medication 500 mg are available through commissary. Further, the plaintiff's trust ledgers for the period November 2009 through February 2009 [16] show that he had funds available to purchase Tylenol 500 mg, a stronger pain medication, from commissary. Further, the ledgers show commissary charges on December 24, 2009 (two days after his visit with Dr. Castrovillo)

3

and again on January 25, 2010. Although the plaintiff is an inmate, he is also an adult and must take some responsibility for himself - such as signing up for nurse sick call, asking the nurse for more Ibuprofen or buying Tylenol at commissary. As all of these options were available to the plaintiff, pursuant to Fed. R. Civ. Pro. Rule 12(B)(6), he may not proceed on his claim that Dr. Castrovillo did not prescribe a pain medication for him on December 22, 2009.

On December 22, 2009, Dr. Castrovillo noted that he wanted to see the plaintiff again on the next sick call. That same day, Dr. Castrovillo ordered a splint for the plaintiff's finger and x-rays for the plaintiff and a follow-up visit in 10-14 days. The medical records show that the x-ray was completed on December 22, 2009. Three weeks later, the results of the x-rays revealed a fracture around or at the joint of the right hand fifth digit. A nurse splinted the plaintiff's finger on December 22. 2009. At the time, she told plaintiff she didn't know how this was going to work because inmates can't possess medical tape, per institutional policy. The plaintiff claims the medical tape fell off within three or four days. Plaintiff claims that the institution policy would not allow him to have medical tape to retape his splint when it would fall off and Dr. Castrovillo should have been aware of this. However, during the merit review conference, Plaintiff admitted that the nurses/medical technicians came to his unit for sick call line and he was able to sign up for nurse sick call line. Plaintiff admitted he could submit a call pass to see a nurse and no one stopped him from doing so. He chose not to do so. Plaintiff says he decided to wait for the follow-up visit to have his splint retaped. So if the tape fell off on day four, the plaintiff knew he might have to wait another 10 days before the expected follow-up visit. Even after not being called for his 10-14 day follow-up, the plaintiff did nothing about getting his finger retaped. He certainly could have signed up for the daily nurse's sick call line and he could have reminded the Health Care Unit that he was past due for his follow-up visit. Plaintiff did not even make medical staff aware that the tape had fallen off. So the plaintiff cannot say that medical staff was deliberately indifferent by failing to retape the splint when it fell off. Pursuant to Fed. R. Civ. Pro. Rule 12(B)(6), the plaintiff may not proceed on the claim regarding the retaping of his splint.

**Dr. O'Basey**. On January 23, 2010, Dr. O'Basey learned from his review of plaintiff's x-ray that he had sustained a 5th finger fracture and that a medical doctor's order was previously issued for follow-up. The plaintiff admits that he was never examined or seen by Dr. O'Basey, but rather Dr. O'Basey only reviewed the x-rays. Plaintiff claims Dr. O'Basey interfered with the prescribed medical treatment of a follow-up by purposefully ignoring the medical doctor's order to perform the follow-up treatment. However, it is apparent that it was not until January 23, 2010 that Dr. O'Basey became aware of the previously order follow-up visit. Dr. O'Basey then scheduled the plaintiff for a follow-up on January 28, 2010. During the merit review conference, the plaintiff admitted that he had no basis to believe that Dr. O'Basey was aware of the missed follow-up prior to January 23, 2010. As plaintiff has failed to show that Dr. O'Basey was deliberately indifferent to his medical needs, pursuant to Fed. R. Civ. Pro. Rule 12(b)(6), Dr. O'Basey is terminated as a defendant.

The medical records also indicate that the plaintiff was a no-show for a January 28, 2010 nurse sick call visit. However, the medical records also indicate that the plaintiff was examined

4

on January 28, 2010 by Dr. Castrovillo, who indicated in the medical notes that there was no redness, no swelling, no pain upon palpitation and plaintiff had good range of motion. Plaintiff claims that none of this is true. He says his finger was swollen and crooked at the time. He also claims in his complaint, filed on March 3, 2011, well over a year after the January 28, 2010 examination, that his finger is still swollen and crooked. Yet, he admits he has never sought further medical care for his "swollen and crooked" finger. As this is an issue of fact, the court will allow the plaintiff to proceed against Dr. Castrovillo on his claim that he was deliberately indifferent to his serious medical needs. The plaintiff may proceed against Dr. Castrovillo for deliberate indifference to his serious medical needs on January 28, 2010.

**Richard Birkey, the warden.** Plaintiff claims he wrote two letters to the warden in March 2010, explaining that he had sustained a fractured finger and he had received inadequate medical care for the injury and that he submitted a grievance to Counselor Putman who did not return a response and it impeded his responsibility to exhaust all of his administrative remedies. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)(finding the plaintiff had no right to a grievance procedure adequate to offer redress of his grievances.) The only right attached to a grievance process is a procedural one, that an inmate must be allowed to exhaust his administrative remedies in order to pursue his right of access to the courts. *Id.* at 1430; *DeWalt v. Carter*, 224 F.3d 607, 6718 (7th Cir. 2000). Here, ultimately the plaintiff was able to exhaust administrative remedies and he has filed this lawsuit proving he has right of access to court. Further, it is well-settled that a plaintiff cannot state a constitutional claim for the denial of a grievance. As to the claims regarding inadequate medical care, in the context of medical treatment, "if a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands . . ." *Greeno v. Daley,* 414 F.3d 645, 656 (7th Cir. 2005). Prison employees with no medical training are entitled to, and in most cases must, rely on the medical professionals who do have that training to diagnose and treat inmate's health conditions. *Greeno v. Daley,* 414 F.3d 645, 656 (7th Cir. 2005)("If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands . . . Perhaps it would be a different matter if [non-medical staff] ignored [an inmate's] complaints entirely, but we can see no deliberate indifference [where the staff] investigated the complaints and referred them to medical providers. . ."). The primary responsibility of non-medical personnel in reviewing grievances about an inmate's health care is to ensure that access to the medical professionals is not being delayed or denied, and to ensure that the treatment decisions of those professionals are being carried out. *See Johnson*, 433 at 1010 (grievance counselor did not have sufficiently culpable state of mind for liability where he "investigated the situation, made sure that the medical staff was monitoring and addressing the problem, and reasonably deferred to the medical professionals' opinions."). Although the plaintiff's initial February 24, 2010 grievance was not responded to because the counselor claims she did not receive it, his second grievance was investigated and the counselor and warden were advised that the plaintiff had received proper medical care. Based on the foregoing, pursuant to Fed. R. Civ. Pro. Rule 12(b)(6), plaintiff's claim against the warden Birkey, the grievance officer, Kirkbride and Glenn M. Putman, the housing unit counselor, Martha S Senkler (housing unit counselor) and Gladyse C. Tayor (acting Director of IDOC) are dismissed.

5

It is therefore ordered:

1. Based on the foregoing, pursuant to 28 U.S.C. §1915A and Fed. R. Civ. Pro. Rule 12(b)(6), Bays, Richard Birkey, Terry Edwards, K. N. Kirkbride, Dr O'Basey, Glenn M Putman, , Martha S. Senkler, Two Unknown Correctional Officers and Gladyse C. Tayor are terminated as defendants.
2. The plaintiff may proceed against Dr. Castrovillo on his claim that Dr. Castroviollo was deliberately indifferent to his serious medical needs on January 28, 2010. Any other claims not specifically set forth in this order shall not be included in the case, except at the court's discretion on motion by a party for good cause shown at the final pretrial conference, or by leave of court pursuant to Federal Rule of Civil Procedure 15.
3. As an initial matter, the Eleventh Amendment bars the plaintiff from recovering money damages against the defendants in their official capacity. *Wynn v. Southward*, 251 F.3d 588, 591 (7th Cir. 2001); *Kentucky v. Graham,* 473 U.S. 159 (1985). Any claims against the defendant in his official capacity for money damages are stricken. An action against a defendant in his or her official capacity is an action against the government entity, in this case the State of Illinois. *See Sanville v. McCaughtry*, 266 F.3d 724, 732 (7th Cir. 2001); *Hadi v. Horn*, 830 F.2d 779, 782 (7th Cir. 1987), *citing Ex parte Young*, 209 U.S. 123 (1908). The 11th Amendment bars damage awards against states, but not awards of injunctive or declaratory relief "requiring a state official to conform his or her behavior to the requirements of federal law in the future." *See Hadi.* A Scheduling Order shall be entered directing service and setting a Rule 16 conference date.
4. A copy of this Merit Review Order shall be served with the Complaint and Scheduling Order. The defendant shall file an <u>answer</u> within the time prescribed by Local Rule. A motion to dismiss is not an answer. The answer must be considered a responsive pleading under Federal Rule of Civil Procedure 15(a) and should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be only to the issues and claims stated in this order.

Enter this 14th day of June 2011.

/s/ Michael M. Mihm
_____
Michael M. Mihm
Sr. United States District Judge